**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2006
Decided December 11, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge**

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-1849

| | |
|---|---|
| GRETCHIN L. LUEBBEHUSEN, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. |
| *v.* | No. 02 C 54 |
| WAL-MART STORES, INCORPORATED, *Defendant-Appellee.* | Richard L. Young, *Judge.* |

**O R D E R**

Gretchin Luebbehusen sued Wal-Mart under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that Wal-Mart discriminated against her on the basis of her gender and retaliated against her complaints of discrimination through a series of demotions that ultimately ended in her termination. The district court granted summary judgment for the defendants, determining that Luebbehusen failed to make a prima facie case of either claim and also failed to show that Wal-Mart's stated reasons for any adverse employment actions were pretextual. On appeal,

---

*Judge Wood recused herself after oral argument and did not participate in the decision of this case.

Luebbehusen challenges only the retaliation finding. Because the district court correctly determined that Luebbehusen has not presented evidence constituting a prima facie case or showing pretext, we affirm.

Luebbehusen was first hired by Wal-Mart in 1997 as an in-store loss prevention associate, responsible for monitoring the store and reducing customer theft. Her managers rated her as "exceeding expectations" in this position in 1997 and early 1998. At the recommendation of her supervisor, she was promoted to district loss prevention supervisor and assumed responsibility for supervising in-store loss prevention associates over a region of stores and deterring employee theft throughout that same region. For her work through 1998 and 1999 in her new position, however, her appraisals began to worsen, and her supervisor criticized her for poor organization and a "confrontational" and "arrogant" attitude.

In the spring of 1999, Luebbehusen began dating an employee under her supervision, an act she admits violated Wal-Mart's anti-fraternization policy. Her supervisors allowed her boyfriend to be transferred outside of her district so they could continue their relationship. In March 2000, however, Luebbehusen took her boyfriend with her to investigate a theft report at one of her stores, and they stayed the night together in a hotel room that Luebbehusen charged to Wal-Mart with her other travel expenses. Luebbehusen's supervisor met with her over the incident, interviewed her, reprimanded her, and ultimately gave her a "decision-making day" (a day off to realize her error and to decide whether she still wanted to work for Wal-Mart). She was informed that the next infraction would result in termination.

Five months later, Luebbehusen's supervisor routinely compared the records for Luebbehusen's company calling card and her travel expense reports, and found serious discrepancies. On days when Luebbehusen was supposed to be spending eight hours visiting various stores an hour or two from her home, she in fact was making phone calls from home or her boyfriend's home throughout the day. Luebbehusen's supervisor gave her another "decision-making day" and demoted her to an in-store loss prevention associate. She was given a chance to respond to the allegations, but her supervisor found her efforts unconvincing.

Luebbehusen's performance in her new position remained unsatisfactory. She was given 30 days to improve but failed to do so. In January 2001, she chose to become a overnight shelf-stocker. Then, after serving a month in this position, Luebbehusen applied for and received a position as a furniture department manager. Her supervisors rated her performance in this position "below expectations" for lack of initiative, poor attendance, negative attitude, and failure to maintain her department, but they again gave her 30 days to improve.

Upon receiving this evaluation, Luebbehusen made a written complaint to her supervisors alleging non-specific instances of sex discrimination. Her supervisors sought to resolve her concerns by meeting and teleconference, during which Luebbehusen expressed that she needed more pay and more assistance, and that other employees' inadequacies were the cause of her poor performance. She also wrote several letters to this effect. To dispel her belief that her gender caused her to be treated differently in any of these regards, her supervisors explained that she was already receiving all the training and assistance offered by Wal-Mart and was paid as much or more than other managers. She swore at her supervisors and walked out on one of the meetings.

Afterwards, her performance still did not improve, and she was evaluated as "below expectations" twice more in the following two months for failing to complete assigned tasks, poor attendance, unorganized and unsafe shelves, insufficient inventory, and negative attitude. She was demoted to cashier for a "final opportunity" to improve.

In May 2001, Luebbehusen filed a sex discrimination and retaliation claim with the EEOC. In June 2001, economic depression in the area surrounding Luebbehusen's store led Wal-Mart to implement a reduction in force. On June 15, 2001 Luebbehusen was terminated in that reduction.

In the district court, Luebbehusen argued that, dating back to the time she was disciplined for spending the night with her boyfriend, she suffered a series of adverse actions—demotions, poor evaluations, and termination—all in retaliation by Wal-Mart for her complaints of working conditions, allegations of sex discrimination, and EEOC filing. Ultimately, the district court granted summary judgment for Wal-Mart, stating that Luebbehusen could not make a prima facie case of retaliation or show that Wal-Mart's stated reasons for its actions were pretextual.

On appeal, Luebbehusen argues that the district court erred in concluding that she did not meet her prima facie case of discrimination. She pursues only the direct method of proving retaliation. To make out a prima facie case under that method, she must present direct evidence that: (1) she engaged in a statutorily protected activity, (2) an adverse employment action was taken against her, and (3) there is a causal connection between the two. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006); *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003); *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002). We review the district court's grant of summary judgment de novo. *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003).

Luebbehusen argues that the district court erred in reviewing the third prong

of her prima facie case when it found a lack of a causal connection between Wal-Mart's adverse employment actions and her protected activity. She argues that a causal connection can be inferred from her supervisor's statement at deposition denying knowledge of Luebbehusen's EEOC filing at the time of her termination and Luebbehusen's evidence that her supervisor was in fact aware of the filing. Luebbehusen contends that her supervisor would have concealed knowledge of the filing only if it was a motivating factor in Luebbehusen's termination.

Under the direct method, however, a plaintiff must present evidence that establishes her prima facie case without reliance on inference of circumstantial evidence. *Sublett*, 463 F.3d at 740; *Sitar*, 344 F.3d at 728; *Stone*, 281 F.3d at 644. Luebbehusen's argument infers, first, that her supervisor intentionally lied at deposition and did not simply make a mistake, and second, that the supervisor lied because she was trying to hide a true motive of retaliation. Such inferences preclude her from satisfying the causal connection required by the direct method.

Even if Luebbehusen were able to show a prima facie case, she cannot show pretext. To establish pretext, Luebbehusen must show that Wal-Mart's asserted reasons for its adverse employment actions are lies. *Sublett*, 463 F.3d at 740; *Stone*, 281 F.3d at 644; *Culver*, 416 F.3d at 545-46. Luebbehusen argues that the conflicting facts regarding her supervisors' knowledge of her EEOC filing as well as Wal-Mart's inability at deposition to cite specific savings in payroll resulting from the reduction in force show that the reduction in force was a pretext to fire her.

The record, however, does not support her contention that Wal-Mart reasoning was pretextual. Wal-Mart used company-wide guidelines to determine which employees would be terminated during the reduction. Luebbehusen was terminated under these guidelines because she had a long history of poor performance that did not meet the legitimate expectations of Wal Mart. She was terminated along with eight others who also fell within the reduction-in-force guidelines, none of whom had engaged in protected activity. Indeed, Wal-Mart terminated employees performing better than Luebbehusen in order to achieve its reduction in payroll. It doesn't matter if Wal-Mart was correct about all of Luebbehusen's shortcomings; all that matters is that Wal-Mart had a non-discriminatory reason for the adverse action. *See Culver*, 416 F.3d at 547. Luebbehusen's bald assertions to the contrary are not enough. *See Filipovich v. K & R Express Sys. Inc.*, 391 F.3d 859, 864-66 (7th Cir. 2004).

For the foregoing reasons, the decision of the district court is AFFIRMED.