In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3382

GUL RONEY,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF
TRANSPORTATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4941, **Ian H. Levin**, *Magistrate Judge.*

ARGUED NOVEMBER 3, 2006—DECIDED JANUARY 18, 2007

Before EASTERBROOK, *Chief Judge,* and FLAUM and
WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This case concerns the second Title VII suit brought by Gul Roney, of Indian descent, against his former employer, the Illinois Department of Transportation ("IDOT"). In the first suit, filed in 1995, a jury found that Roney had not been the subject of unlawful retaliation by IDOT. We affirmed that verdict in *Roney v. Illinois Department of Transportation*, No. 98-1298, 1999 WL 691165 (7th Cir. Sept. 2, 1999). While his first appeal was pending, Roney filed a second suit against IDOT asserting: (1) retaliation (for filing the first claim); (2) employment discrimination on the basis of national

origin; and (3) hostile work environment. The district court granted IDOT summary judgment on each of Roney's claims, finding that Roney could not establish a prima facie case of retaliation or discrimination or show that he was subject to a hostile work environment. We agree and affirm.

## I. BACKGROUND

Roney was hired by IDOT in 1979 as an Engineering Technician II. By 1992, he had been promoted to level IV ("ET-IV") and attained the title of Resident Technician, a position commonly referred to as "Resident Engineer." Resident Engineers are assigned by a construction supervisor to a project where they oversee the work of outside contractors and supervise all IDOT employees on a project.

In 1994, Roney filed charges of discrimination with the EEOC alleging that IDOT had engaged in national origin discrimination and retaliation. He obtained a Notice of Right to Sue, and in 1995, he filed his first Title VII action against IDOT. In that suit, Roney claimed that IDOT had given him lower salary increases due to his national origin and retaliated against him after he complained to his state representative. Roney's case went to trial, and the jury returned a verdict in favor of IDOT. Roney appealed the verdict and we affirmed. *See Roney*, 1999 WL 691165, at *1.

On April 28, 1998, while Roney's first appeal was pending, he filed a second EEOC charge against IDOT accusing it of national origin discrimination and retaliation for pursuing his earlier lawsuit. Roney initiated his second lawsuit against IDOT on July 27, 1999, asserting claims of retaliation, national origin discrimination, and hostile work environment. On November 4, 1999, Roney resigned from IDOT.

A few months later, Roney amended his EEOC charge and alleged that IDOT retaliated against him for pursuing his previous lawsuit, filing his new EEOC charge and bringing a second lawsuit. Roney then filed an amended complaint, in which he alleged that he was constructively discharged and subjected to a hostile work environment. IDOT filed for summary judgment and argued, *inter alia*, that some of Roney's retaliation claims were time-barred. The district court granted IDOT partial summary judgment on this basis and concluded that Roney's claims involving conduct occurring more than 300 days before he filed his second EEOC charge (i.e., before July 2, 1997) were time-barred. *See* Order at 2*, Roney v. Ill. Dep't of Transp.*, No. 99 C 4941 (N.D. Ill. May 19, 2000). In reaching this conclusion, the district court found that there was "no basis for finding a continuing violation in this case." *Id*. On August 15, 2000, Roney filed a second amended complaint, which incorporated a second Notice of Right to Sue. After the parties conducted discovery, IDOT again filed a motion for summary judgment, which was granted in its entirety. Roney appeals, and we review de novo the district court's decision. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

## II.  ANALYSIS

### A.  Roney's Retaliation Claims

Under Title VII's anti-retaliation provision, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). An employee can establish a prima facie case of retaliation by proceeding under either the direct or indirect method. *See Sublett v. John Wiley & Sons, Inc.*,

463 F.3d 731, 740 (7th Cir. 2006). Under the direct approach, the employee must show evidence that he engaged in a statutorily protected activity (such as bringing a Title VII claim) and as a result, suffered an adverse action. *Id.* Alternatively, the employee may proceed under the indirect approach and show that after he complained of discrimination, he, and not any other similarly situated employee who did not complain, was subject to an adverse action although he was performing up to the employer's legitimate job expectations. *Id.* "Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Id.* (quoting *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004)).

i.  Roney's demotion claim is time-barred.

Before we address the sufficiency of Roney's claims of retaliation, we must first settle an issue disputed by the parties at oral argument: whether Roney's demotion claim is time-barred by Title VII's statute of limitations. At the outset of the litigation, the district court ruled that Roney could not recover on his claims that involved conduct occurring before July 2, 1997. The district court's ruling stems from 42 U.S.C. § 2000e-5(e)(1), which provides that a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice. An "unlawful employment practice" includes various discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire." *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002); 42 U.S.C. § 2000e-2(a). If a plaintiff does not file a charge concerning a discrete act of discriminatory conduct within 300 days of its occurrence, his claim is time-barred and he may not recover. *Morgan*, 536 U.S. at 109-10. Because Roney's EEOC charge was filed on April 28, 1998, any discrete acts that occurred more than 300

days prior to this date, or before July 2, 1997, cannot be the basis of his Title VII claims.

Although Roney acknowledges the cut-off date in his brief, one of his most significant claims of retaliation—that IDOT demoted him from the position of Resident Engineer, ET-IV to Resident Technician/Inspector—took place in November 1996. At oral argument, Roney's counsel characterized Roney's alleged demotion by IDOT as conduct of a "continuing nature," of which Roney did not become aware until he received a performance evaluation in 1998. However, the record establishes that Roney knew about the retaliatory act of which he now complains shortly after it occurred. On November 21, 1996, Roney wrote a letter to his supervisor, Lee Schmidt, wherein Roney complained that Schmidt had entered Roney's working title as Resident Technician/Inspector in his performance plan for November 1996 to November 1997. In the letter he states, "it appears that you want me to consent to your biased and prejudicial review of my overall and specific abilities contrary to Mr. Saeed's rating."[1] It is clear that Roney thought he had been discriminated against by the change in his title, which Roney claims was a demotion; however, Roney waited over 300 days to file a charge with the EEOC.

As explained by the Supreme Court in *Morgan*, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. A demotion, like other discrete acts of alleged discrimination, is an unlawful employment practice that must be brought to the EEOC's attention within 300 days of

---

[1] Docket No. 86, Lee Schmidt Dep., Ex. 15, *Roney v. Ill. Dep't of Transp.*, No. 99 C  4941 (N.D. Ill. May 4, 2005).

its occurrence. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004) (listing demotions in the category of discrete acts). Because Roney waited more than 300 days after the alleged demotion to file an EEOC charge, his demotion claim is time-barred.[2] In addition, the incidents accompanying the demotion—his inability to control his own overtime and the loss of his Resident Engineer mailbox—are likewise excluded from our consideration. *See Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994) (finding that because the plaintiff's promotion claims were untimely, her claim of discriminatory pay based on her failure to obtain the promotion was also time-barred).

ii. Roney cannot establish a prima facie case of retaliation.

We now turn to Roney's timely filed claims of retaliation. In doing so, we recognize that the discriminatory acts proscribed by Title VII's anti-retaliation provision are not limited to those that affect the terms and conditions of one's employment. *See Burlington N. & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2412-13 (2006). However, the employer's challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity. *See id.* at 2415. As discussed below, Roney's numerous claims of retaliation cannot succeed because they either do not rise to the level of a materially adverse action or have no support in the record.

Roney alleges that IDOT retaliated against him both during and after his employment at IDOT. During his

---

[2] Title VII's filing requirement is subject to the doctrines of equitable tolling and estoppel, *see Morgan*, 536 U.S. at 113, however, Roney does not invoke them in support of his argument that his demotion claim was timely filed.

employment, Roney claims that IDOT: (1) assigned him to a dangerous inspection job for which he had not been trained; (2) refused to create a performance plan for him; (3) refused his request to use a state vehicle; (4) prevented him from getting a merit raise by ignoring a positive letter of recommendation; (5) threatened him with termination because he did not file an Economic Interest Statement; and (6) disciplined him based on fabricated grounds. Roney also raises a claim of constructive discharge that we will address at the conclusion of this opinion.

Roney contends that he was "assigned to painting operations, a dangerous job, for which [he] was never trained" Brief for Appellant at 23, *Roney v. Ill. Dep't of Transp.*, No. 05-3382 (7th Cir. Mar. 23, 2006); however, Roney misrepresents the actual nature of his job assignment. The testimony of Roney's supervisor Schmidt makes clear that Roney was not assigned to *perform* the painting operations. Rather, his job was to *inspect* the operations under the supervision of a Resident Engineer. According to Schmidt, depending on work load and personnel availability, he would often assign people with Resident Engineer status, like Roney, to work as an inspector under another Resident Engineer in charge of a project. Because such assignments were routine, it is unlikely that a reasonable employee would view Roney's inspection assignment as materially adverse.

Next, Roney cites IDOT's refusal to create a performance plan for him between 1996 and 1999, a document that purportedly forms the basis of an employee's yearly evaluation. It is unclear, however, in what way IDOT's omission adversely affected Roney. The record shows that four performance evaluations were completed for Roney between 1996 and 1999; therefore, any significance that IDOT's alleged refusal to create a performance plan may have had is diminished. Roney's third claim, that IDOT refused him use of a state vehicle, is not a materially

adverse action. Although IDOT's conduct may have inconvenienced Roney, it is unlikely that it would have deterred a reasonable employee from making a charge of discrimination.

Roney also contends that IDOT deprived him of an "exceptional performance merit raise" by ignoring an unauthenticated letter of recommendation written by another Resident Engineer. However, Roney's claim is defeated by the fact that IDOT was no longer giving such raises during the period at issue. The evidence that Roney offers in support of his fifth claim, that IDOT threatened him with termination if he did not file an Economic Interest Statement ("EIS"), is insufficient to defeat IDOT's motion for summary judgment. Roney cites to his declaration and deposition testimony, however, this evidence lacks the requisite specificity to show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Roney's statements do not establish that IDOT was prohibited from requiring him to complete an EIS; nor is it known that IDOT's alleged threat of termination to enforce this requirement was improper, let alone a discriminatory act that could be considered materially adverse.

In Roney's sixth claim, he alleges that in 1999, IDOT took two disciplinary actions against him that were based on fabricated grounds. The first action, which resulted in an oral warning, stemmed from a May 1999 incident between Roney and Resident Engineer Imad Shahatit. According to the disciplinary report, when Shahatit confronted Roney about his absence from the job site, Roney responded by screaming and yelling at Shahatit and jumping and shaking his head and arms. A contractor who witnessed the incident verified Shahatit's story in a statement. Other than Roney's own speculation, he points to no evidence that suggests IDOT would invent the basis for processing the oral warning. The second disciplinary action of which Roney complains occurred on

July 21, 1999, when IDOT issued another disciplinary report that accused Roney of falsifying his time record with regard to overtime. In addition to repeating the unsubstantiated assertion that IDOT fabricated this disciplinary report, Roney alleges that IDOT illegally destroyed the job site records that "would likely" have assisted him in verifying that he worked on the dates in question. It is unclear from the record whether IDOT prematurely destroyed the job site records; however, Roney does not put forth any evidence that those records contained information that would have confirmed that he worked on those days.

Roney's remaining claims of retaliation, which occurred after he left IDOT, also fall short of constituting a materially adverse action. First, Roney claims that in 2001, during the Illinois State Police's investigation of a threatening letter received by an IDOT employee, IDOT falsely reported that Roney had been terminated from his employment. According to Roney, IDOT's report caused the police to interview him as part of its investigation. While the record is bereft of any direct evidence of the exact information IDOT conveyed to the police about Roney, one could infer that someone at IDOT identified Roney as a former employee who resented the Department. This sentiment, however, is revealed by the comments Roney made in his exit interview form. An employer's *truthful* report to the police about an employee is not an adverse action. *Aviles v. Cornell Forge Co.*, 241 F.3d 589, 593 (7th Cir. 2001). Roney also claims that IDOT caused the Illinois Department of Employment Security ("IDES") to deny him unemployment benefits. However, there is no evidence that IDES's ultimate denial of benefits to Roney could be attributed to IDOT. Rather, the administrative decision was based on IDES's finding that Roney was not constructively discharged because he chose to voluntarily resign instead of going through the available hearing process.

None of the above-alleged acts of discrimination have the necessary support to establish that they were materially adverse. Therefore, Roney cannot prove this essential element of a prima face case of retaliation under either the direct or indirect method. As such, it is unnecessary for us to determine whether Roney was treated differently from a similarly situated employee.

**B.  Roney's Remaining Title VII Claims**

As detailed above, Roney cannot show that he suffered an adverse employment action; therefore, his claim of national origin discrimination likewise fails. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (citing as an element of a prima facie case of discrimination under the indirect method a showing that the employee was subject to an adverse employment action). Roney's final claim is that he was subjected to a hostile work environment because he was embarrassed and humiliated by IDOT's treatment. For this claim to be actionable, the conduct of which Roney complains "must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Furthermore, the workplace must be shown to be both subjectively and objectively offensive. *Id.* Roney submits that he was embarrassed and humiliated by IDOT's treatment, but he offers nothing in the way of establishing that his work environment could objectively be perceived as hostile; therefore, this claim is without merit.

Because we find that Roney was not subject to a hostile work environment, his claim of constructive discharge is automatically foreclosed. To advance such a claim, an employee's working conditions "must be even more egregious than the high standard for hostile work environment because an employee is expected to remain employed while

seeking redress." *See Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2006) (internal citations and quotations omitted). Furthermore, Roney has not alleged any conditions that could be considered "so intolerable that a reasonable person would have felt compelled to resign." *See Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

In sum, Roney is unable to establish a prima facie case of retaliation or national origin discrimination. Nor can he sustain his claims of hostile work environment or constructive discharge. Therefore, the district court's grant of summary judgment to IDOT was proper.

## III. CONCLUSION

The judgment of the district court is hereby AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*