In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-2433

DEBORAH MALIN,

*Plaintiff-Appellant,*

*v.*

HOSPIRA, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 4393 — **Joan Humphrey Lefkow**, *Judge.*

ARGUED MAY 20, 2014 — DECIDED AUGUST 7, 2014

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Deborah Malin appeals
from the district court's grant of summary judgment in favor
of her employer on her retaliation claim under Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in
favor of the employer and several managers on her retalia-
tion claim under the Family and Medical Leave Act, 28
U.S.C. § 2601 *et seq.* We reverse and remand for trial.

The case requires us to consider Malin's experience over several years as an employee with Hospira's Information Technology department, which was reorganized in 2006. As detailed below, Malin has offered evidence that she was effectively demoted as part of the 2006 reorganization. She has also offered evidence that would allow a reasonable jury to find that the demotion was (a) part of a manager's long-term effort at retaliation for a sexual harassment complaint she made over his vociferous objection in 2003, or (b) in retaliation for her use of FMLA leave during the reorganization, or (c) both. In reversing summary judgment on Malin's Title VII retaliation claim, we reject the idea that the passage of a particular amount of time between protected activity and retaliation can bar the claim as a matter of law. Although three years is a significant period of time, Malin has offered evidence of other retaliatory behavior between her 2003 sexual harassment complaint and the 2006 reorganization and demotion that bridges the gap between the two events, leaving the issue of causation for a jury at trial.

I.  *Factual and Procedural Background*

Because the case comes to us on appeal from a grant of summary judgment, we present the evidence through the summary judgment lens, giving plaintiff the benefit of all conflicts in the evidence and all reasonable inferences that might be drawn from the evidence, without necessarily vouching for their objective accuracy. *Naficy v. Illinois Dep't of Human Services*, 697 F.3d 504, 509 (7th Cir. 2012). Plaintiff Deborah Malin began working at Abbott Laboratories in April 1996 as an employee of the Information Technology (IT) department supporting Abbott's hospital products division. She received several promotions between 1996 and

2003, rising to a salary grade of 18 by January 2003. Her salary grade would remain fixed at 18 for almost a decade.

In July 2003, Malin told her direct supervisor, Bob Balogh, that she was going to complain to Human Resources about sexual harassment by her indirect supervisor, Satish Shah. While Malin was still in his office, Balogh called his and Shah's boss, Mike Carlin, and told him about Malin's plan. Malin heard Carlin shouting through the phone. When Balogh hung up the phone, he told Malin that Carlin had told him to do everything in his power to stop Malin from going to Human Resources. Malin told Balogh that she was going ahead, and she made a formal sexual harassment complaint to Human Resources based on Satish Shah's behavior.

Evidence of Carlin's hostility to Malin's complaint is central to the case, so we pause to address an evidentiary issue. Evidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony. E.g., *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Hospira argues that Malin's testimony about what Balogh said Carlin told him to do is inadmissible hearsay. That is incorrect. At the first level of potential hearsay, Carlin's instruction was not a statement of fact being offered to prove the truth of any matter asserted, so it was not hearsay at all. At the second level, Balogh's report to Malin of Carlin's instruction fits squarely within the definition of a statement in Federal Rule of Evidence 801(a). Malin offers that out-of-court statement to prove the truth of its contents: that Carlin screamed at

Balogh and told him to do all he could to stop Malin from making a formal complaint about Shah.

Malin therefore needs a hearsay exception to admit Balogh's statement into evidence. She has two. Balogh described Carlin's screamed admonition to Malin immediately after it occurred, so we agree with the district court that the comment qualifies as a present sense impression under Federal Rule of Evidence 803(1). Further, according to Malin, Balogh was visibly startled by Carlin's comment and told her about it immediately, "while under the stress of excitement that it caused." See Fed. R. Evid. 803(2). The comment is thus also admissible as an excited utterance under Rule 803(2). See *United States v. Boyce*, 742 F.3d 792, 796–98 (7th Cir. 2014) (discussing scope and application of both hearsay exceptions).[1]

Back to the facts. Abbott's Human Resources department investigated Malin's allegations and eventually issued a counseling memorandum to Shah stating that his behavior was a serious lapse in judgment and that any similar incidents in the future would result in disciplinary action up to and including termination. Carlin signed the memorandum and added it to Shah's file. Shah was screened from all future employment decisions regarding Malin, but no further disciplinary action was taken against him. Carlin remained Malin's ultimate supervisor in the IT department.

---

[1] We do not decide whether Balogh's statement might have been a party admission excluded from the definition of hearsay under Rule 801(d)(2). At the time, all the participants were working for Abbott before it spun off defendant Hospira as a separate corporation.

In May 2004, Abbott spun off its hospital products division (where Malin worked) from the main company. Malin, Carlin, Shah, and others were transferred from Abbott to the resulting new company, now named Hospira. At Hospira, Malin continued to work in the IT department. Carlin was the chief information officer at Hospira, meaning that his approval was required for all salary grade or manager level increases in the IT department. Salary grade increases are promotions at Hospira. An increased salary grade results in larger bonuses and a higher salary. It can also include added privileges such as having an office and higher stock option awards. Increases in manager level (indicated by a lower number, though) are also considered promotions.

Between the 2003 complaint and the 2006 Hospira reorganization, Malin applied for several promotions at Hospira but received none of them. For example, in May 2004, Malin applied for a position listed at salary grade 19. After she applied, some nominal duties were removed from the position and the slightly modified position was offered to Malin at salary grade 18. Malin accepted the position anyway. In July 2004, Malin's then-supervisor, Ed Schipp, told her that he was extremely pleased with her performance in that position and could not understand why he was not permitted to assign the position a salary grade of 19. He then asked Malin what had happened between her and Shah. The attachment to Malin's EEOC complaint detailed numerous other instances where Malin's supervisors commended her performance and told her they would recommend a promotion, but she nevertheless was not promoted. During the entire period from 2003 through 2007, Carlin, who told Balogh in 2003 to do all he could to prevent Malin from making her sexual harassment complaint, was the final decision-maker

for all promotions in the IT department, including all the promotions Malin sought.

In early 2005, Malin held the position of IT Manager for quality systems, which was at salary grade 18 and manager level 2. Her immediate supervisor was Jay Anderson, who then reported directly to Carlin (the chief information officer). In December 2005, Malin asked Anderson to upgrade her position to grade 19. On January 12, 2006, Anderson met with Malin in his office to discuss her salary grade, compensation, and career direction. During that meeting, Anderson told her that she had again been denied a salary grade increase. Carlin would have had final authority over that decision. Malin told Anderson that she was experiencing ongoing retaliation by Carlin because she had reported an incident to Human Resources.

Anderson immediately emailed Carlin and Hospira Human Resources manager Andrea Bochek about Malin's comment. In the email, Anderson told Carlin that Malin had mentioned a "retaliation circumstance," and that Malin believed she was "not fairly compensated" and was "being held back." Bochek investigated. She concluded that Malin was assigned to the appropriate pay grade and was not being retaliated against. Hospira took no further action, and Carlin remained Malin's boss.

Hospira's IT department went through an extensive and lengthy reorganization process in 2006, which Carlin oversaw. A critical event for purposes of Malin's FMLA claim was a meeting held on June 14, 2006 for the management team (including Carlin, Anderson, and Shah) to discuss potential roles for current IT employees in the post-reorganization IT department. The parties dispute whether any final decisions

about the reorganization were made before or during the June 14 meeting. Both Bochek and Andrea Manski, another manager involved in the reorganization, testified that no final decisions had been made about current employees' roles in the reorganized department prior to the June 14 meeting, and that no final decisions were made during the meeting either. In an odd turnabout in summary judgment practice, Hospira as the moving party has pointed to no contrary evidence, such as testimony from someone at the meeting saying that a final decision had been made. The district court nevertheless thought the undisputed facts showed that managers decided not to promote and even to demote Malin before or during that meeting, before she said she needed to take FMLA leave. We discuss the evidence concerning the June 14 meeting in more detail below as part of our analysis of Malin's FMLA retaliation claim. The critical point is that the evidence does not show beyond reasonable dispute that the key decisions were made before Malin's request for FMLA leave.

On June 19, 2006, Malin's sister notified Anderson that Malin needed to take FMLA leave effective immediately. On June 22, 2006, Anderson received an email notifying him that Malin had requested FMLA leave beginning June 19, with an undetermined end date. Anderson forwarded the email to Bochek in Human Resources and asked her whether Malin's FMLA leave "impacts my organizational plans or if I need to do anything different in terms of documentation etc."

On July 12, the IT department reorganization was announced. Malin was not promoted. Instead, the reorganization created a new position ("Manager, Relationship Management – Quality") directly above her, so that she would

now report to the new position, which would in turn report to Anderson. This new position was assigned a salary grade of 20 and a manager level of 2. Before the reorganization, Malin's position was a manager level 2 position. After the reorganization, Malin's position (which now reported to the new position instead of reporting directly to Anderson) was dropped to manager level 3. In other words, while Malin's position remained at salary grade 18, it was at a lower management level than it had been before the reorganization. The new position was left empty, however.

There is conflicting evidence regarding who made the decision not to promote Malin. Carlin and Anderson testified that although Carlin was the final decision-maker, Anderson effectively made the decision. But when Malin asked Anderson why she was not promoted, Anderson told her that Carlin had made the decision and that he had nothing to do with it. Regardless of the amount of input that Anderson may have had on the decision, we must assume in this appeal that Carlin was the ultimate decision-maker in the reorganization process and made all final decisions about promotions as part of that reorganization. Anderson lacked the authority to make final promotion decisions.

Malin returned to work in September 2006, after the reorganization took effect. She was given the title of Relationship Manager for the Quality and Regulatory organization, a salary grade 18 position. Despite its similar name, this was not the new, higher-level Relationship Quality Management position that appeared directly above her on the organizational chart. That position was still empty.

Although she was not promoted, Malin nevertheless performed the duties of the Relationship Quality Management

position for a year after its creation. Despite taking on the duties of the (officially empty) position, Malin did not receive a salary grade increase, manager level increase, or other increase in salary, bonus, or benefits. Instead, although she was effectively filling a position assigned salary grade 20 and management level 2, she remained at salary grade 18 and the lower management level 3.

Malin's performance review for that period indicated that she was performing the duties of the supposedly empty, higher-ranking Relationship Quality Management position. Specifically, the review stated that Malin "continues to perform the role of the Senior RM including performing all the Relationship Manager responsibilities." The review also said that Malin excelled at performing these additional responsibilities. For example, according to the review, Malin was recognized by an outside contractor as an "example" relationship manager that the other relationship managers "should model."

In 2006 and 2007, while Malin was performing the duties of the Relationship Quality Management position for no additional pay, she repeatedly asked Anderson why she had not been officially promoted into that position. She also repeatedly asked to be promoted into the position, which remained empty. In April 2007, Anderson told Malin he would talk to Carlin about promoting her into the new position. Anderson did not identify any problems with Malin's work to explain why she was not given the new position. In fact, he told Malin that he was extremely pleased with her performance and that it was the type of performance he was looking for in whoever filled the new position. Despite this

conversation, Malin heard nothing else about a possible promotion to the new position.

Finally, in June 2007, Carlin recommended that Anderson interview a new external candidate, Anil Monga, for the new position. Anderson did so on June 19. On June 25, Hospira posted the new position for applications. Malin applied on June 29, but her application was never reviewed and she did not receive an interview. Monga was offered the position on July 18, and accepted on July 24. No other candidates were interviewed.

Malin remained at salary grade 18 until 2010, when Carlin left the company and stopped having final authority over her job, promotions, and compensation. Within months, Malin's new manager offered her a promotion, the first she had received since she complained about retaliation in 2003 over Carlin's vigorous objection.

II. *Analysis*

Malin asserts that Hospira engaged in retaliation prohibited by Title VII and the Family and Medical Leave Act when it failed to promote her and in fact demoted her as part of the 2006 reorganization. We review *de novo*, i.e., without deference, the district court's grant of summary judgment, examining the record in the light most favorable to Malin and drawing all reasonable inferences from the evidence in her favor. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Summary judgment is appropriate when there are no genuine disputes of material fact and the moving parties are entitled to judgment as a matter of law. *Id.*

Both Title VII and the FMLA prohibit employers from retaliating against employees who engage in activity protected

under the statute. 42 U.S.C. § 2000e-3 (Title VII); 29 U.S.C. § 2615(a)(2) (FMLA); *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592–93 (7th Cir. 2008). We begin by discussing Malin's Title VII retaliation claim and then turn to her retaliation claim under the FMLA. We conclude with a few comments on Hospira's approach to summary judgment practice.

A. *Title VII Retaliation Claim*

Malin argues that Hospira retaliated against her for making a sexual harassment complaint about Shah in 2003 when it did not promote her and effectively demoted her as part of the 2006 reorganization. She claims that because she refused Carlin's demand and filed a formal complaint with Human Resources about Shah, Carlin effectively froze her career by blocking her attempts to rise any further in the company and by effectively demoting her as part of the 2006 reorganization.

Malin proceeds under the direct method of proof in this appeal, which requires her to provide evidence that (1) she engaged in a statutorily protected activity, (2) her employer took a materially adverse action against her, and (3) there was a causal connection between the two. *Caskey*, 535 F.3d at 593. Elements (1) and (2) are satisfied: Malin's 2003 complaint to Human Resources about Shah was protected activity, and demoting or failing to promote an employee is an adverse employment action that can give rise to liability under Title VII. E.g., *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 743–44 (7th Cir. 2002). We focus on element (3), whether Malin has presented evidence that would allow a reasonable jury to find a causal connection between her 2003 complaint to Human Resources about Shah and the adverse actions that Hospira took against her during and after the

2006 reorganization of her department. Despite the name of the direct method of proof, we consider both direct and circumstantial evidence in evaluating such claims. E.g., *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Malin is free to rely on either or both to support her position.

Viewed through the lens of summary judgment, the record contains ample evidence to support the inference that Hospira retaliated against Malin for her 2003 sexual harassment complaint when it carried out the 2006 reorganization. In the 2006 reorganization itself, Malin was not promoted (and in fact was effectively demoted) despite being singled out as a model Relationship Manager by the outside consulting company involved in the reorganization. For the year following the reorganization, Malin performed the duties of the position she had been denied (which remained empty) without any increase in salary, manager level, or benefits. Her performance evaluation for that time acknowledged that she was performing the empty position's duties and praised her performance. Although she repeatedly asked to be promoted into the position and although Anderson commended her performance and said he would talk to Carlin about promoting her, she was not promoted. When the empty position was eventually posted, Malin's application was not even considered.

It is true that, as Hospira points out, three years passed between Malin's complaint about Shah to Human Resources and the 2006 reorganization of her department. The district court held that three years was simply too long an interval to support an inference that retaliation had occurred. Hospira goes further, arguing in this appeal that the three-year time

interval is a "fatal time gap" that forecloses any inference of retaliation. We disagree.

"The mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Southeastern Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 894 (3d Cir. 1993); see also *Carlson v. CSX Transp., Inc.*, — F.3d —, 2014 WL 3361072, *7–8 (7th Cir. July 10, 2014) (rejecting timing-based rule at the pleadings stage and collecting cases); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009–10 (7th Cir. 2000) ("[o]f course, the fact that a year passed between [employee's] protected expression and her termination does not mean that she cannot prove that retaliation caused her discharge"); *Gee v. Principi*, 289 F.3d 342, 345–47 (5th Cir. 2002) (reversing summary judgment for employer where employee's complaint and allegedly retaliatory failure to promote were separated by two years); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 916 (3d Cir. 1997) (affirming verdict for plaintiff; reasonable jury could find retaliation where protected activity and plaintiff's termination were separated by two years).

The strongest support for Hospira's position is our decision in *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605 (7th Cir. 2001). In *Oest*, the district court had "found dispositive" the interval between Ms. Oest's complaint and the adverse employment actions. *Id.* at 615. We affirmed: "Under the circumstances presented here, . . . the district court was correct in its estimation that the delay was too attenuated to support a jury verdict of retaliation." *Id*. at 616.

Although we affirmed the district court's grant of summary judgment in *Oest*, we did not adopt the rule that Hospira advocates, namely, that a long enough interval between protected activity and adverse employment action will bar

any inference of retaliation. In fact, we made clear that we were not adopting that standard:

> A mechanistically applied time frame would ill serve our obligation to be faithful to the legislative purpose of Title VII. The facts and circumstances of each case necessarily must be evaluated to determine whether an interval is too long to permit a jury to determine rationally that an adverse employment action is linked to an employee's earlier complaint. The inference of causation weakens as the time between the protected expression and the adverse action increases, and then additional proof of a causal nexus is necessary. Thus, we have permitted retaliation charges to proceed in the face of long intervals only when additional circumstances demonstrate that an employer's acts might not be legitimate.

*Id.* (internal quotations and references omitted). See also *Carlson v. CSX Transp., Inc.*, — F.3d at —, 2014 WL 3361072, *7 ("no bright-line timing rule can be used to decide whether a retaliation claim is plausible or whether it should go to a jury"), citing *Oest*.

We reiterate what we have said consistently and repeatedly in retaliation cases stretching back more than a decade: a long time interval between protected activity and adverse employment action may weaken but does not conclusively bar an inference of retaliation. See, e.g., *Oest*, 240 F.3d at 616; *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998). Rather, if the time interval standing alone is long enough to weaken an inference of retaliation, the plaintiff is entitled to rely on other circumstantial evidence to support her claim. See, e.g., *Coleman*, 667 F.3d at 860–61; *Troupe v. May*

*Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321–22 (7th Cir. 1992) (considering the timing of plaintiff's complaints together with other circumstantial evidence of retaliatory motive). Hospira's attempt to reduce this analysis to a simple matter of timing is not persuasive.

The evidence in this case permits an inference that Carlin had a long memory and repeatedly retaliated against Malin between 2003 and 2006. Malin was denied promotions numerous times between 2003 and 2006. During that time, Carlin was the final decision-maker on all promotions in the IT department, both at Abbott and after the spin-off at Hospira. Malin's immediate supervisors repeatedly told her that she would be an excellent fit for newly-available positions at higher salary grades and that they would recommend that she be promoted into them. Nevertheless, Malin did not receive any promotions at Hospira between 2003 and 2006. On one occasion, several years after Malin's complaint, a perplexed supervisor commended Malin's work, asked why he was not allowed to increase her salary grade, and asked her what had happened with Shah. These incidents are circumstantial evidence that Carlin remembered Malin's complaint about Shah and acted to prevent her from being promoted at Hospira long after the complaint was made. Based on this evidence, a reasonable jury could find that Carlin (and thus Hospira) retaliated against Malin when he decided not to promote her, and effectively to demote her, as part of the 2006 reorganization even though the reorganization and Malin's protected activity were separated by several years.

Hospira's arguments regarding Malin's Title VII retaliation claim overlook all promotion decisions that involved

Malin between 2003 and 2006. Hospira points out that those intervening decisions are not actionable because they are outside the scope of Malin's EEOC charge and occurred more than 300 days before she filed that charge. See 42 U.S.C. § 2000e-5(e)(1) (requiring that a Title VII plaintiff file an EEOC charge within 300 days of the alleged unlawful employment action); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).[2] That's correct as a matter of law but does not mean those events are not relevant in evaluating Hospira's actions in 2006 and 2007. The district court erred by failing to consider any hiring decisions involving Malin between 2003 and 2006 in evaluating Malin's Title VII retaliation claim.

Hospira's approach to this evidence is mistaken for several reasons. First, Malin attached a document to her EEOC charge that detailed numerous hiring decisions between 2003 and 2006 that, in her view, showed retaliation. These events were submitted to the EEOC as evidence that the decision not to promote her as part of the 2006 reorganization was retaliatory. While many of these events occurred more than 300 days before Malin submitted her EEOC charge, Malin does not seek relief for them. Rather, she offers those events as circumstantial evidence that the decision not to promote her in 2006 was part of a retaliatory pattern. She is entitled to do so. In fact, in *National Railroad Passenger Corp. v. Morgan*, the Supreme Court specifically stated that Title

---

[2] Malin has not argued that she experienced a continuing violation, which might have allowed her to reach beyond the 300-day statute of limitations. See *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112–13; *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723–24 (7th Cir. 2004) (discussing availability of continuing violation doctrine).

VII does not "bar an employee from using the prior acts [that fall outside the statute of limitations] as background evidence in support of a timely claim." 536 U.S. at 113. We have of course followed that directive in many cases. See, e.g., *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (plaintiffs can support retaliation claims under direct method by using circumstantial evidence, including evidence of suspicious timing and "other bits and pieces from which an inference of discriminatory intent might be drawn"). Hospira's argument is therefore foreclosed by Supreme Court and Seventh Circuit precedent, and we reject it here.

Circumstantial evidence can be used with the "direct" method of proof. *Coleman*, 667 F.3d at 845; *Boumehdi*, 489 F.3d at 792. The employment decisions listed in Malin's EEOC attachment provide a bridge between Malin's protected activity in 2003 and the eventual decision not to promote her in 2006. They support the inference that Carlin did not forget about Malin's 2003 complaint to Human Resources but effectively froze Malin out of any promotions at Abbott and then Hospira after she filed the complaint over his strong objection. The district court should not have overlooked this evidence. See *National Railroad Passenger Corp. v. Morgan*, 536 U.S. at 113.

We therefore hold that Malin has offered sufficient evidence to survive summary judgment on her Title VII retaliation claim. A reasonable jury could find that Malin engaged in protected activity, that Hospira took an adverse employment action against her when it refused to promote her and effectively demoted her as part of the 2006 reorganization and during its execution into 2007, and that there was a

causal connection between those events. The district court accordingly erred in granting summary judgment to Hospira on Malin's Title VII retaliation claim.

B. *FMLA Retaliation*

Malin also contends that Hospira retaliated against her for requesting FMLA leave when it failed to promote and effectively demoted her as part of the 2006 reorganization of her department.[3] The same model of proof applies to both her Title VII and FMLA retaliation claims. To avoid summary judgment under the direct method, Malin needed to provide evidence that (1) she engaged in activity protected by the FMLA, (2) her employer took an adverse employment

---

[3] Malin's FMLA and Title VII retaliation claims involve the same employment decision but are not logically inconsistent. "To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010) (internal quotations omitted). Although Title VII retaliation claims were formerly evaluated using this same motivating factor test, the Supreme Court has recently interpreted Title VII's retaliation provision to require proof of but-for causation instead. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013); see also *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) (requiring but-for causation for ADEA discrimination claims).

Our circuit has not addressed, and the parties have not briefed, whether but-for causation should apply to FMLA retaliation claims in light of *Gross* and *Nassar*. We need not resolve the question here, however, because Malin can avoid summary judgment on both claims even if but-for causation applies to her FMLA retaliation claim. A single event can have multiple but-for causes, so Malin's FMLA leave request and her sexual harassment complaint could both have been but-for causes of Hospira's allegedly retaliatory conduct. A jury could find that both claims have merit.

action against her, and (3) the two were causally connected. *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Hospira does not dispute that Malin's request for FMLA leave constituted protected activity under the FMLA. Failing to promote an employee is a materially adverse employment action for purposes of the FMLA, and the same is true of a demotion. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978–79 (7th Cir. 2008). As with the Title VII claim, the first two elements of an FMLA claim are satisfied for summary judgment purposes, and we again focus on the third element, a causal connection between the protected activity and adverse action.

The district court found it was undisputed that by the time Malin's sister requested FMLA leave on Malin's behalf, Hospira had already decided not to promote her as part of the 2006 reorganization of the IT department. If that were correct, then summary judgment for Hospira on Malin's FMLA retaliation claim would have been proper. There could not have been a causal connection between Malin's FMLA leave and an earlier decision not to promote her in the 2006 reorganization.

Contrary to the district court's holding, however, there is a genuine dispute of material fact regarding when Hospira made the decision not to promote Malin as part of the 2006 reorganization. Malin asked for FMLA leave on June 19, well before the reorganization was announced on July 12. Hospira claims that Malin was no longer being considered for promotion by the time she requested FMLA leave. However, Hospira points to no evidence that actually supports this assertion.

The only relevant evidence in the record relates to what happened at the June 14 meeting. Both Bochek from Human

Resources and another manager, Andrea Manski, testified
that no final decisions about the reorganization had been
made before the meeting. The record also contains two doc-
uments from the meeting: a spreadsheet of possible posi-
tions and candidates for those positions, and a document
containing talking points from the meeting. These docu-
ments are the only information in the record about what po-
sitions were being contemplated at the time of the meeting,
and whether specific employees had been assigned to them.
Rather surprisingly, there is no testimony from defense wit-
nesses explaining them.

The spreadsheet listed various positions planned for the
reorganized IT department, their salary grades, the "best fit"
candidate for the position if one existed, a "compromise"
candidate for the position if one existed, "potential candi-
dates" for the position, and other miscellaneous information.
Two positions included on the spreadsheet are relevant to
this case: "Manager- Application Development," which was
a salary grade 19 position, and "Manager, Relationship
Management- Quality," a salary grade 20 position. Assign-
ment to either position would have represented a promotion
for Malin, who was in salary grade 18 at the time. Neither
position has a best fit or compromise candidate listed on the
spreadsheet. Instead, both positions are listed as "open."
Malin is listed as one of two potential candidates for the
"Manager- Application Development" position. No potential
candidates are listed for the "Manager, Relationship Man-
agement- Quality" position.

Bochek and Manski also both testified that no final deci-
sions were made at the June 14 meeting. The talking points
document from the meeting might be interpreted to mean

that Malin was no longer being considered for the Relationship Quality Management position at the time of the June 14 meeting. In that document, under the heading "Risk," Malin's name appears next to the question, "Why didn't I get the Grade 20 L2 Role?" The Relationship Quality Management position was classified as salary grade 20 on the spreadsheet, so it was a "Grade 20 L2 Role." The Manager of Application Development position, on the other hand, was classified as salary grade 19, and so was not a "Grade 20 L2 Role." The Manager of Application Development position is not mentioned anywhere in the talking points document.

Hospira points to no explanatory affidavits or testimony about these documents, such as any indication that the question indicated a final decision had been made prior to or during the June 14 meeting. We thus are left to evaluate the meeting documents without the benefit of any explanatory evidence from meeting participants or other decision-makers.

There are at least two different reasonable readings of the evidence. Under one reading, Malin was considered for a promotion only to grade level 19 as part of the 2006 reorganization, and she had been ruled out for promotion before she requested FMLA leave. Under another plausible reading, Malin was being considered for at least one promotion (to salary grade 19) when she requested FMLA leave and may well have been under consideration for another promotion (to salary grade 20) as well. This is exactly the type of situation where summary judgment must be denied. The trier of fact will need to decide which reading is more persuasive in light of all the evidence at trial.

Viewed through the lens of summary judgment, a reasonable jury could find that Hospira retaliated against Malin for requesting FMLA leave when it did not promote and effectively demoted her as part of the 2006 reorganization. Based on this evidence, a jury could easily find that the reorganization had not been finalized before Malin requested FMLA leave on June 19. Several higher-level positions appear to have still been open as of the June 14 meeting, and Malin was actually listed as a candidate for one of them. Anderson was aware that Malin requested FMLA leave and asked Bochek whether her request would affect his plans in any way. When Malin returned, she found that she had not only failed to receive a promotion as part of the reorganization but had in fact been demoted. This evidence of a causal connection between Malin's request for FMLA leave and Hospira's allegedly retaliatory employment action is not conclusive, of course, but it certainly suffices to withstand summary judgment. See *Pagel*, 695 F.3d at 631 (reversing summary judgment for employer on FMLA retaliation claim; employee can establish causation through "a convincing mosaic of circumstantial evidence [that] may include suspicious timing and ambiguous statements from which retaliatory intent can be drawn").

C. *Summary Judgment Practice*

We close by noting our disappointment with Hospira's approach to summary judgment practice, which is such a common part of modern federal civil litigation and especially employment discrimination cases. Both in the district court and in this appeal, Hospira has misrepresented the record and Malin's legal arguments. For example, Hospira repeatedly cherry-picked isolated phrases from Malin's dep-

osition and claimed that these "admissions" doomed her case. When the testimony is read in context, however, it becomes clear that Malin made no such admissions, and that Hospira's presentation of the evidence amounted to nothing more than selectively quoting deposition language it likes and ignoring deposition language it does not like.

For example, on the subject of Malin's qualifications for the empty Relationship Quality Management position, Hospira claimed that Malin conceded that Anil Monga, who was eventually hired to fill the position, was better qualified than she was. That is simply incorrect: Malin actually testified that in some ways Monga was more qualified than she and that in some ways she was more qualified than Monga. Similarly, Hospira claimed that Malin admitted she had no information to support her claim that Hospira retaliated against her for requesting FMLA leave. Her deposition testimony made clear, however, that she was talking about the basis for her subjective belief that she was being retaliated against, not whether she had introduced evidence of retaliation in her lawsuit. These misrepresentations of the record did not comport with parties' duty of candor to the courts.

Hospira seems to have based its litigation strategy on the hope that neither the district court nor this panel would take the time to check the record. Litigants who take this approach often (and we hope almost always) find that they have misjudged the court. We caution Hospira and other parties tempted to adopt this approach to summary judgment practice that it quickly destroys their credibility with the court.

This approach to summary judgment is also both costly and wasteful. If a district court grants summary judgment in

a party's favor based on its mischaracterizations of the record, the judgment will in all likelihood be appealed, overturned, and returned to the district court for settlement or trial. This course is much more expensive than simply pursuing a settlement or trying the case in the first instance. Further, the costs incurred while engaging in these shenanigans stand a real chance of being declared excessive under 28 U.S.C. § 1927, even if the abusive party prevails at trial on remand. See *Administrative Committee v. Jay*, 135 F. Supp. 2d 941, 944 (N.D. Ill. 2001). Risking such pitfalls in the hope of avoiding a trial is a dramatic miscalculation of the risks and rewards of each approach. *Id.*

The district court's judgment in favor of Hospira on Malin's Title VII and FMLA retaliation claims is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.