In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1402

ROBERT FORMELLA,

*Plaintiff-Appellant*,

*v.*

MEGAN J. BRENNAN, Postmaster
General, United States Postal Service,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 3032 — **Virginia M. Kendall**, *Judge.*

ARGUED JANUARY 22, 2016 — DECIDED MARCH 10, 2016

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, Robert Formella
("Formella"), appeals the district court's grant of summary
judgment in favor of defendant-appellee, the Postmaster
General of the United States Post Office ("USPS"). Formella
sued USPS for employment discrimination based on race
and age, in violation of Title VII of the Civil Rights Act of 1963,
42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII"), and the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), respectively, and retaliation in violation of Title VII. For the following reasons, we affirm the district court's decision.

## I. BACKGROUND

Formella, a white male, worked for USPS for 31 years. He became a postal police officer in 1998 and was promoted to sergeant in 2003. The USPS police officers were assigned to one of three shifts, called "tours." Tours 1 and 3 had the opportunity for "premium pay" for work performed on Sundays and after 6:00 p.m. As a sergeant, Formella supervised six to ten officers on his tour, created schedules, responded to incidents, and dispatched officers.

In 2009, Formella decided to retire and submitted his paperwork to USPS. At that time, he was on tour 1. However, Formella changed course and decided not to retire. He claimed USPS would not allow him to withdraw his retirement paperwork, and he filed an administrative appeal. The parties reached a settlement that allowed Formella to return to work, but on tour 2, which had no opportunity for premium pay.

According to Formella, he repeatedly informed his supervisors that he wanted to transfer off tour 2 and onto either tours 1 or 3. He knew Sergeant Loretta Williams ("Sergeant Williams") was planning to retire, but Formella did not request to be transferred to Sergeant Williams' position because he thought her position had the same work days and pay as his position. In April 2011, Inspector in Charge Thomas Brady ("Brady"), who is white, posted a vacancy announcement for the supervisor position created by Sergeant Williams' retire-

ment. Only when the job was posted did Formella realize that the position was eligible for premium pay. Formella contends that he would earn $7,000.00 more per year in premium pay on tour 3 than on tour 2.

Upon seeing the posting, Formella told his direct supervisor, Captain Douglas Williams ("Captain Williams"), who is African-American, that he was interested in the position. Captain Williams inquired up the chain of command to see if Formella could transfer "non-competitively" into the position. He told Formella he could apply for a non-competitive transfer or attempt to compete for the position. Formella then asked Brady if he could transfer non-competitively into the position. Brady informed Formella that he would not approve the non-competitive transfer because the position posting had already been published and Formella had not asked Captain Williams for the position prior to the posting. It is undisputed that Brady had the discretion to withdraw the posting and approve Formella's non-competitive transfer.

Ultimately, Formella competed for the position against two other officers, Officer Fields and Officer Brown, both of whom are African-American and over 40 years old. Brady interviewed the three applicants, asking them all the same questions and scoring their responses on a numerical scale. Based on the interviews, Brady hired Officer Fields. According to Brady, he did not choose Formella because he had the impression that Formella felt entitled to the position, as throughout the interview Formella repeated the phrase "RHIP," which stands for "rank has its privileges." Brady also indicated that Formella was not prepared for the interview, did not answer questions completely or correctly, and only wanted the

position due to the potential increase in pay. Brady felt Officer Fields presented better in the interview, as Officer Fields had complete and correct answers to questions and was well prepared.

After finding out he was not selected for the position, Formella filed an informal EEO complaint with USPS on July 4, 2011. Formella alleged that Brady had discriminated against him because of his race and age. In his formal complaint, filed in October 2011, Formella alleged that Captain Williams retaliated against him for filing his EEO complaint, in addition to alleging the employment discrimination on the part of Brady. Formella complained of various activities on the part of Captain Williams that constituted the retaliation, including: Captain Williams instituted a new policy where salaried sergeants were required to punch a time clock; Captain Williams paid more attention to Formella's work, requiring him to make grammatical and spelling corrections to his reports; during a staff meeting, Captain Williams warned Formella about his use of profanity; and Captain Williams gave Formella contradictory instructions regarding attendance forms.

In December 2012, Formella filed a second informal EEO complaint regarding additional retaliatory acts on the part of Captain Williams. Formella complained that the following additional activities constituted retaliation: Captain Williams refused to accept Formella's doctor's note clearing him to return to work after a sick leave, as the doctor's note did not comply with USPS requirements; when Formella returned to work after the sick leave, Captain Williams misclassified a week as leave without pay, even though Formella had used his

accrued sick leave for those forty hours; and Captain Williams instructed Formella to attend a management meeting in his police uniform, but when Formella arrived at the meeting and was the only one in uniform, Captain Williams "humiliated" him by ordering him to change into street clothes and then informing the meeting attendees that street clothes were to be worn to these meetings.

On January 17, 2013, USPS issued its Final Agency Decision (the "Decision") and denied Formella's claims of discrimination and retaliation. In rendering the Decision, USPS also considered two additional acts of retaliation as alleged by Formella: Captain Williams revoked Formella's ability to use the "ePACS" system to program access badges; and Captain Williams singled out Formella of all sergeants to perform carrier safety checks. Formella filed suit in federal court within 90 days of the Decision, asserting claims for race discrimination and retaliation in violation of Title VII and age discrimination in violation of the ADEA.

USPS moved for summary judgment, and the district court granted the motion. With regard to his reverse racial discrimination claim, the district court found that Formella failed to establish a *prima facie* case because he failed to present background circumstances to show that Brady (who is white) was inclined to discriminate against Formella (who is also white). The district court also found that there was nothing "fishy" about the fact that Formella was the only white applicant. Also, the district court found Formella failed to identify a similarly situated employee who was treated more favorably. The district court also found that even if Formella

had made out a *prima facie* case, USPS gave non-discriminatory reasons for its actions, and Formella failed to show pretext.

With regard to Formella's ADEA claim, the district court found Formella failed to identify a similarly situated employee who was treated more favorably, thereby failing to establish a *prima facie* case of age discrimination. Further, Formella failed to show pretext to defeat USPS's non-discriminatory reasons for its actions.

With regard to Formella's retaliation claims, the district court found that Formella failed to show that any of the alleged retaliatory actions would have dissuaded a reasonable employee from engaging in protected activity. Additionally, the district court found that only one of the activities of which Formella complained, Captain Williams' rejection of Formella's doctor's note, could possibly qualify as an adverse employment action. However, the district court found the timing between the rejection of the doctor's note and the filing of his EEO complaint (a period of ten months), was insufficient to establish causation under the direct method of proof. Under the indirect method of proof, Formella failed to identify a similarly situated employee.

## II. DISCUSSION

We review the district court's granting of the motion for summary judgment *de novo* and construe all facts and reasonable inferences in Formella's favor. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 673 (7th Cir. 2012) (citation omitted). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). Because Formella failed to demonstrate a genuine issue of material fact on any of his claims, summary judgment in favor of USPS was proper.

USPS argues that Formella's claim regarding the non-competitive transfer is untimely, but we disagree. Specifically, USPS argues that Formella's initial informal EEO complaint was not filed within 45 days of Brady's denial of Formella's non-competitive transfer request.

Federal government employees may bring Title VII and ADEA employment discrimination claims in federal court only after they have timely exhausted their administrative remedies. 42 U.S.C. § 2000e-16c; *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001) (citations omitted); *McGinty v. United States Dept. of the Army*, 900 F.2d 1114, 1116–17 (7th Cir. 1990). Federal employees must obtain EEO counseling or file an informal complaint within 45 days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1).

"[T]he doctrines of waiver, estoppel and equitable tolling" apply to the limitations provisions of employment discrimination claims. *Ester*, 250 F.3d at 1071 (citation omitted). "When an agency decides the merits of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit." *Id.* at 1071–72.

USPS has waived any timeliness arguments with regard to the denial of the non-competitive transfer. In the Decision, USPS addressed Formella's claim pertaining to the denial of the non-competitive transfer on the merits and did not address timeliness. Therefore, any timeliness arguments by

USPS with regard to the non-competitive transfer claim are waived.

Formella argues that he has established a *prima facie* case of reverse racial discrimination based upon two actions of Brady: (1) his refusal to allow Formella to transfer non-competitively to the tour 3 position; and (2) his selection of Officer Fields, who is "less qualified" and "non-white," over Formella for the tour 3 position. Formella has proceeded under the indirect proof, burden-shifting method enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and as modified by *Mills v. Health Care Service Corp.*, 171 F.3d 450, 457 (7th Cir. 1999), for reverse racial discrimination cases.

To survive summary judgment, Formella must show that: (1) "background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand"; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class. *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citations and quotations omitted); s*ee also Good*, 673 F.3d at 678 (citing *Phelan v. City of Chicago*, 347 F.3d 679, 684–85 (7th Cir. 2003); *Mills*, 171 F.3d at 455; and *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002)). If Formella meets his burden and establishes a *prima facie* case, the burden shifts to USPS to "provide a legitimate, nondiscriminatory reason for the [adverse employment] decision." *Ballance*, 424 F.3d at 617 (citations omitted). If USPS meets its

burden, the burden shifts back to Formella to show the reasons given by USPS are a pretext for discrimination. *Id.*

While prongs 2 and 3 of a *prima facie* case for reverse racial discrimination are met in this case, Formella's claim fails on prongs 1 and 4. With regard to prong 2, USPS does not argue that Formella was not meeting its legitimate performance expectations. Therefore, it is undisputed that Formella was meeting USPS's job expectations.

With regard to prong 3, Formella suffered an adverse employment action. It is undisputed that USPS offered premium pay to those officers on tour 3, and by remaining on tour 2 Formella lost out on $7,000.00 of premium pay per year that was available on tour 3. When overtime pay or premium pay is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action. *See, e.g., Henry v. Milwaukee Cty.*, 539 F.3d 573, 585–86 (7th Cir. 2008) (citation omitted); *Lewis v. City of Chicago*, 496 F.3d 645, 653–54 (7th Cir. 2007). Taking all evidence and reasonable inferences in Formella's favor, we find that the denial of his non-competitive transfer request and the hiring of Officer Fields over Formella constitute adverse employment actions.

However, Formella has waived any arguments with regard to prong 1. Because Formella is a white male, he is subject to the reverse discrimination standard outlined in *Mills v. Health Care Service Corp.*, 171 F.3d 450, 455 (7th Cir. 1999), rather than the first prong of the *McDonnell Douglas* test (which is being a member of a protected racial class). *McDonnell Douglas*, 411 U.S. at 802. In his opposition to USPS's motion for summary

judgment, Formella simply stated that he "was a member of the protected classes," as he was "the only white candidate for the position." (Doc. 44, at 2–3). Formella failed to present any argument in his opposition to USPS's motion regarding any background circumstances showing USPS or Brady (who is white) had a reason to discriminate against whites or anything "fishy" about the facts of his case. Since he failed to address this reverse discrimination standard in opposing USPS's motion for summary judgment, Formella has waived these arguments on appeal. *Smith v. Bray*, 681 F.3d 888, 902 (7th Cir. 2012) (citation omitted).

In addition, Formella has failed to sufficiently identify similarly situated employees who are non-white for comparison purposes to meet prong 4. "Similarly situated employees must be directly comparable to the plaintiff in all material respects." *Good*, 673 F.3d at 675 (citations and quotations omitted). The goal of the comparison analysis is to "eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Id.* (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)).

With regard to Brady's denial of Formella's non-competitive transfer, Formella proffers Sergeant Latonya Wyatt ("Sergeant Wyatt"), an African-American woman, as a similarly situated comparator. In his separate statement of additional facts, Formella states: "In 2009, Captain Williams allowed Sergeant Wyatt (black) to transfer tours non-competitively, and she benefitted financially from the tour change."

(Doc. 45, at 12, ¶ 20). In support of this fact, Formella cites to roughly 11 lines of his own deposition testimony. *Id*.

Other than a brief passage from his own deposition testimony, as to which he lacked personal knowledge, Formella has submitted no evidence to establish Sergeant Wyatt as a similarly situated comparator. Formella has presented no evidence to indicate whether Sergeant Wyatt requested the transfer or whether she was transferred unilaterally by a supervisor.[1] In fact, Captain Williams stated in his affidavit to USPS in response to Formella's EEO complaint that Sergeant Wyatt did not request a non-competitive transfer and that he and his supervisor unilaterally transferred her to ensure a sergeant on every shift. (Doc. 34–5, at 37).

Also, Formella has presented no evidence as to whether a vacancy announcement was posted prior to Sergeant Wyatt's transfer. Although Formella testified at his deposition that Sergeant Wyatt requested a non-competitive transfer, he admitted that a vacancy posting had not been published prior to her transfer. But in Formella's situation, a vacancy posting had already been published before he requested his non-competitive transfer. (Doc. 45–1, at 36, ln. 10–14).

Whether a vacancy had been posted prior to requesting a non-competitive transfer is a crucial detail for this analysis. It is undisputed that Brady had the discretion to withdraw the

---

[1] We note that Formella submitted an excerpt from Sergeant Wyatt's deposition transcript after oral argument in this case. We cannot consider this evidence in rendering our decision because this evidence is not included in the record. Fed. R. App. P. 10(a); *Henn v. Nat'l Geographic Soc.*, 819 F.2d 824, 831 (7th Cir. 1987).

posting and approve Formella's non-competitive transfer. In other words, the only way Formella could have transferred non-competitively to the position were if Brady exercised his discretion to withdraw the vacancy posting and approve the transfer. In Sergeant Wyatt's situation, no vacancy posting had been published prior to her request to transfer; thus, Brady was not faced with having to choose whether to exercise his discretion to pull the vacancy posting and approve the transfer. Therefore, Sergeant Wyatt and Formella were in two completely different administrative situations.

Given this evidence, Sergeant Wyatt is not a true comparator for Formella on the issue of the non-competitive transfer denial. Because Formella has failed to present a similarly situated employee for comparison, he has failed to make a *prima facie* case of reverse racial discrimination with regard to the denial of his non-competitive transfer request.

With regard to Brady's choice of Officer Fields over Formella for the position, the only evidence Formella offered to show racial discrimination was that Officer Fields was "less qualified" and that Formella was a sergeant and Officer Fields was not. But, it is undisputed that Brady found all three candidates, including both Formella and Officer Fields, to be qualified for the position. It is undisputed that Formella did not know the answers and provided incomplete answers to some interview questions. It is undisputed that when Brady asked Formella what made him the best candidate, Formella responded that he would benefit financially from the transfer. It is undisputed that Formella told Brady during the interview that he intended to return to school and work in the firearms industry. It is undisputed that Formella repeatedly said

"RHIP" ("rank has its privileges") during the interview, which projected an attitude of entitlement. It is undisputed that Officer Fields scored highest on the interview, as he was well-prepared and provided appropriate, complete, and correct answers to the interview questions. Based on this undisputed evidence, Formella and Officer Fields are not sufficiently similarly situated for comparison purposes.

Despite this undisputed evidence, Formella nevertheless argues that Brady "rigged" the scoring of the interviews to result in a higher score by Officer Fields. Other than his own unsupported deposition testimony, Formella has presented no admissible evidence to support this argument. Such speculation on the part of Formella "cannot be used to defeat a motion for summary judgment." *Ballance*, 424 F.3d at 620 (citation omitted). Formella failed to present any evidence tending to show why his white superior (Brady) would discriminate against Formella, who is also white, based on his race. Formella failed to present any evidence regarding Officer Fields' qualifications, education, training, or performance history. Simply put, Formella has not shown reverse racial discrimination.

Moreover, even if Formella had met his burden and established a *prima facie* case of reverse racial discrimination with regard to the hiring of Officer Fields over him, he cannot show that Brady's reasons for the hiring were pretextual. "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, and so long as the employer honestly believes those reasons, pretext has not been shown." *Ballance*, 424 F.3d at 617 (citation, quotation, and brackets omitted). In short, Formella has the burden to show Brady's

reasons for choosing Officer Fields over Formella constitute lies. *Id*. (citation omitted).

Formella has not carried his burden. As referenced above, the details pertaining to both Formella's and Officer Fields' performance in the interview are undisputed. Based on this undisputed evidence, Officer Fields performed better in the interview than Formella. Better performance in an interview is unquestionably a legitimate, nondiscriminatory basis to hire one candidate over another. *See, e.g., Healy v. City of Chicago*, 450 F.3d 732, 742 (7th Cir. 2006); *Blise v. Antaramian*, 409 F.3d 861, 867–68 (7th Cir. 2005).

Because Formella failed to establish a *prima facie* case of reverse racial discrimination, summary judgment in favor of USPS was proper.

Formella also argues that Brady denied his non-competitive transfer and selected Officer Fields over him due to Formella's age. The ADEA prohibits employment discrimination against people over 40 years old. 29 U.S.C. §§ 623(a)(1), 631(a). However, Formella has waived his ADEA claims by failing to develop any arguments in his opposition to USPS's motion for summary judgment and by failing to present fully developed arguments in his opening appellate brief. *See, e.g., Smith*, 681 F.3d at 902 (citation omitted); *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (citation omitted); *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (citations omitted). In his summary judgment opposition, Formella simply lumps in his age discrimination claim with his race discrimination claims. He presented no facts or evidence pertaining to age in his separate statement of additional facts.

In his opening appellate brief, Formella simply redirects us to the arguments he made regarding his race discrimination claims. While the analysis is similar for an age discrimination claim and a race discrimination claim, Formella has developed no independent age discrimination argument in either the district court or here supporting his ADEA claims. Thus, these arguments are waived.

Lastly, Formella argues that Captain Williams retaliated against him after he filed his informal EEO complaints. Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's anti-retaliation provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee … [such] that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Similar to employment discrimination claims, an employee claimant can prove his or her retaliation claim by either the direct or indirect method of proof. *Roney v. Ill. Dept. of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007) (citation omitted). Here, Formella proceeds under both methods. To succeed under the direct method, Formella "must show evidence that he engaged in a statutorily protected activity … and as a result, suffered an adverse action." *Id.* (citation omitted). Further,

under the direct method, Formella "may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be shown." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (citation omitted). To succeed under the indirect method, Formella must "show that after he complained of discrimination, he, and not any other similarly situated employee who did not complain, was subject to an adverse action although he was performing up to the employer's legitimate job expectations." *Roney*, 474 F.3d at 459 (citation omitted). "Failure to satisfy any one element of the *prima facie* case is fatal to an employee's retaliation claim." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (citation and quotation omitted).

First, Formella engaged in a statutorily protected activity. He filed an informal EEO complaint alleging race and age discrimination on the part of Brady in denying Formella's noncompetitive transfer and choosing Officer Fields for the position. This complaint is a statutorily protected activity. 42 U.S.C. § 2000e-3(a); *Boumehdi*, 489 F.3d at 792.

The next step in our analysis is to determine whether Formella suffered an adverse action. Under both methods of proof, Formella must show that the activity of which he complains constitutes "an adverse action." An employment action is adverse if a reasonable employee would find it materially adverse such that the reasonable employee would be dissuaded from engaging in the protected activity. *Bur-*

*lington N.*, 548 U.S. at 68 (citations and quotation omitted); *Roney*, 474 F.3d at 461 (citation omitted); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009) (citation omitted). To be adverse, the action must "produce[] an injury or harm." *Burlington N.*, 548 U.S. at 67. It must be "significant" and cannot be "trivial." *Id*. at 68. "[N]ormally petty slights, minor annoyances, and simple lack of good manners" do not constitute adverse employment actions. *Id*. (citation omitted).

In his opposition to the USPS motion, Formella failed to argue how any of the actions on the part of Captain Williams would dissuade a reasonable employee from engaging in protected activity (in this case, filing the EEO complaints). Because he failed to present any argument in the district court, any such arguments are waived on appeal. *See, e.g., Smith*, 681 F.3d at 902 (citation omitted).

Even if the adverse action argument were somehow preserved for appeal, only one action on the part of Captain Williams could be construed as adverse. When Captain Williams rejected Formella's doctor's note, Formella was required to use an additional week of sick leave to obtain a second doctor's note. This could dissuade a reasonable employee from engaging in protected activity, while the other actions would not. For instance, actions such as having to punch a time clock pursuant to a newly instituted policy for all salaried employees, having to make grammatical and spelling corrections to reports, and being assigned menial work or other duties are not materially adverse. Formella presented no evidence that these actions were anything other than trivial, minor annoyances. *See, e.g.*, *Nagle*, 554 F.3d at 1119–21 (transfer

to different position, assignment to undesirable duties, sched-
ule changes, and suspension that was never served found to
not constitute adverse actions); *Roney*, 474 F.3d at 461–63
(different job assignment, employer's refusal to create perfor-
mance plan, merit raise not given to employee when employer
did not give such raises to any employees found to not
constitute adverse actions); *Dandy v. United Parcel Serv., Inc.*,
388 F.3d 263, 275 (7th Cir. 2004) (denial of promotions where
employee not qualified for such promotions and denial of
lateral transfer with same pay and benefits found to not
constitute adverse actions).[2]

With regard to the rejection of the doctor's note, Formella's
retaliation claim fails under both the direct and indirect
methods of proof. Under the direct method, Formella must
show that Captain Williams rejected the doctor's note because
Formella filed his EEO complaint. *Roney*, 474 F.3d at 459
(citation omitted). Formella failed to present any direct or
circumstantial evidence that the filing of the EEO complaint
was the cause of Captain Williams' rejection of the doctor's
note.

Alternatively, Formella argues that the rejection of the
doctor's note cannot be viewed in isolation, and that all of the
actions on the part of Captain Williams constituted "a pattern
of retaliatory conduct" that culminated in the rejection of the

---

[2] Formella complains of two instances when Captain Williams marked
Formella absent without leave. However, these timekeeping errors were
corrected and Formella received payment for that time. Thus, neither error
constitutes an adverse action. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 505
(7th Cir. 2004).

doctor's note. An employee may weave together a pattern of many different actions which together would constitute circumstantial evidence of discrimination, such that a reasonable jury could find a causal connection between the protected activity on the part of the employee and the retaliatory conduct on the part of the employer. *Malin v. Hospira, Inc.*, 762 F.3d 552, 558–59 (7th Cir. 2014); *Boumehdi*, 489 F.3d at 792 (citation omitted). However, a reasonable jury could not find a causal connection between the filing of Formella's informal EEO complaint and the activity of Captain Williams, as Formella's proffered pattern does not support a reasonable inference of retaliatory intent.

Formella's reliance on *Malin* and *Boumehdi* is misplaced; those two cases are factually distinguishable from Formella's case. In *Malin*, the employee was unjustifiably passed over numerous times for promotions and effectively demoted by the same supervisor who outwardly opposed her filing of a sexual harassment complaint. *Malin*, 762 F.3d at 558–59, 560. The supervisor who opposed her sexual harassment complaint controlled all raises and promotions, and single-handedly stalled the employee's career. *Id*. In *Boumehdi*, the employee received an unjustified negative performance review and was repeatedly shorted on her pay after making a complaint to the human resources department about sexual harassment on the part of her supervisor. *Boumehdi*, 489 F.3d at 793. Also, the supervisor repeatedly referenced the employee's complaint in a derogatory manner when speaking with her. *Id*.

Here, there is no direct or circumstantial evidence that Captain Williams' rejection of the doctor's note, or any of his

other actions, were a result of Formella's filing of the EEO complaints. Additionally, Formella has not presented evidence that establishes a causal connection between any alleged discrimination by Brady and the alleged retaliation by Captain Williams, or as between the filing of the EEO complaint and Captain Williams' actions. Taken individually or cumulatively, the actions of which Formella complains do not support a reasonable inference of retaliatory intent.

Finally, Formella's retaliation claim also fails under the indirect method of proof because Formella failed to proffer any employees who are similarly situated for comparison purposes. *See Roney*, 474 F.3d at 459 (citation omitted).

Therefore, summary judgment in favor of USPS on Formella's retaliation claims was proper.

### III.  CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.